UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Barry Haywood | ) | CASE NO. 13-21360-JPK |
| | ) | Chapter 13 |
| Debtors. | ) | |

## OBJECTION TO PROOF OF CLAIM NO. 3
## OF MULTIBANK 2009-1 RES-ADC VENTURE, LLC

Comes now debtor, by his attorney Jonathan Petersen, and file his Objection to the Proof of Claim No. 3 of Multibank 2009-1 RES-ADC Venture, LLC ("Creditor") that was filed on August 19, 2013, and in support of their objection state as follows:

1) Creditor filed a Proof of Claim on August 19, 2013.

2) Pursuant to 11 U.S.C. 506, creditor has mischaracterized the nature of debt as unsecured. The debt is secured by property located at 594 Andover Street, Gary, IN (see mortgage note attached hereto as Exhibit "A") and the valuation of the asset is equal to or exceeds the amounts owed.

3) Creditor has failed to substantiate the calculated amounts shown on page 4 of the Proof of Claim.

4) Debtor disputes the amounts purportedly owed to creditor.

WHEREFORE, the Debtors pray that this Court issue an Order Creditor's claim be modified to remove any claim for unsecured debt.

Date: April 6, 2016

By:    /s/ Jonathan Petersen
       Jonathan Petersen
       (Attorney # 26893-45)
       1544 – 45th Avenue, Ste 3
       Munster, IN 46321
       Office:     (219) 803-4550
       Facsimile:  (219) 933-6557
       jpetersen@attorneypetersen.com

       *Attorney for Debtor*

## CERTIFICATE OF SERVICE

I certify that on the 6th day of April, 2016 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by electronic transmission and pursuant to BRCP 3007(a) a true and complete copy of the above and foregoing was mailed USPS 1st class by depositing the same in the United States Mail in envelopes properly addressed to each of them and with sufficient first class postage affixed.

Office of the United States Trustee
100 E. Wayne Street
South Bend, IN 46601

Paul R. Chael, Trustee
401 W. 84th Drive, Ste. C
Merrillville, IN 46410

Multibank 2009-1 RES-ADC Venture, LLC
c/o Quantum Servicing Corporation
6302 East Dr. Martin Luther King Blvd, ste 300
Tampa, FL 36619

Quantum Servicing Corporation
c/o Ronald Bruckmann,
Jones Walker, LLC
201 S. Biscayne Blvd, Ste 2600
Miami, FL 33131

Date:  April 4, 2016                    By:    /s/ Jonathan Petersen
                                               Attorney for Debtor

# EXHIBIT A

# COMMERCIAL PROMISSORY NOTE
## (INTEREST ONLY)

STATE OF ILLINOIS   )
COUNTY OF COOK     )

DATE:  January 18, 2007

AMOUNT: $69,000.00

### SECURED PROPERTY:

#### 594 Andover Street, Chicago Heights, IL. 60411

## 1. BORROWER'S PROMISE TO PAY

*In return for* a loan that I, the undersigned, have received this date, I promise to pay Sixty Nine Thousand Dollars (U.S. $69,000.00) (this amount being called the "Principal"), plus *interest*, to the order of the Lender. The "Lender" is **Omni National Bank.** I understand that the Lender may transfer this Promissory Note. The undersigned is also sometimes hereinafter called "Maker". The Lender or anyone who takes this Promissory Note by transfer and who becomes entitled to receive payments under this Promissory Note is also hereinafter called the "Note Holder".

## 2. INTEREST

(A) Interest will be charged on the unpaid principal balance until the full amount of the principal has been paid. I will pay interest at an initial annual rate of 14.99%. Interest will accrue based upon a 360 day year, with payments being calculated at 30 days per payment period.

(B) The interest rate I pay may change on March 5, 2007 and may change on the fifth day of every month thereafter. Each date on which my interest rate could change is called a "Change Date."

(C) Beginning with the first Change Date, my interest rate will be 14.99% plus or minus an increase or decrease in the Prime Rate since the prior Change Date. The "Prime Rate" *is the* highest Prime Rate published in the Wall Street Journal "Money Rates" section (or, if such source is not available, such alternate source as determined by the Lender) on the first day of the month prior to the Change Date.

(D) The interest rate I am required to pay hereunder will never be less than 14.99%.

(E) My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) The Lender will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Initials 

1 of 6

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay interest only on the outstanding principal balance monthly on the 5th day of each successive month commencing on **March 5, 2007**. I will make interest payments every month until **February 5, 2008**, (the "Maturity Date") at which time I will pay the entire principal balance due hereunder plus any accrued and unpaid interest plus any other accrued and unpaid charges which may arise hereunder or under the terms of the mortgage given by Maker to Lender to secure the indebtedness evidenced hereby. Interest will accrue for each month based upon the daily principal balance due hereunder.

I will make the monthly payments (and all other payments due hereunder) to the Lender at **King Tower, Six Concourse Parkway, Suite 2300, Atlanta, Georgia 30328**, or at such other place as may be required, from time to time, by the Note Holder.

### (B) Amount of Monthly Payments

The initial monthly interest payment *and all other monthly payments* due hereunder shall be no less than U.S. **$861.93** (based upon the initial principal balance of $69,000.00). In the event that the principal balance due hereunder shall be reduced or prepaid, the monthly payment shall nonetheless be no less than $861.93 and any amount remaining after first applying the monthly payment and/or any prepayment to interest and to any other charges which shall have accrued hereunder or under the Security Instrument (as hereinafter defined), shall then be applied to principal.

### (C) Additional Payments of Principal and Prepayment Penalty

There shall be no penalty or premium for prepayment of principal in full or in part at any time. Except, however, in the event of a partial prepayment, the monthly payment amount shall remain fixed, as set forth above. At payoff of the loan, a charge of **$125.00 shall be added as additional compensation to the Lender to cover the costs of satisfying the Security Instrument of record and preparation of payoff requests.**

### (D) Maturity

I will pay the outstanding principal balance plus any accrued and unpaid interest and other charges in full on or before **February 5, 2008**. A failure to pay the outstanding principal balance plus any and all accrued and unpaid interest and other charges shall constitute a default hereunder and under the Security Instrument (as hereinafter defined). The Note Holder is under no obligation to extend the Maturity Date hereof unless otherwise set forth herein or unless otherwise agreed to in writing by the parties prior to the Maturity Date.

## 4. LIMITATION OF INTEREST AND LOAN CHARGES

IT IS HEREBY EXPRESSLY AGREED that if for any circumstances whatsoever fulfillment of any provision of this Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statue or any other law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Note that is in excess of the limit of such validity. In no event shall Maker be bound to pay for the use, forbearance or detention of the money loaned pursuant hereto, interest of more than the current legal limit; the right to demand any such excess being hereby expressly waived by Holder. Upon early payment by voluntary prepayment, acceleration, foreclosure or otherwise, any and all finance charges, interest, discount or origination fees, if any, will be either rebated or credited as a reduction of the amount due hereunder, at the sole discretion of

Initials

Lender, so that in no circumstances will there be finance charges or interest charged or collected hereunder in excess of the maximum limit imposed by Illinois law, as that limit may be set and defined, from time to time.

## 5. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue

A charge equal to ten percent (10%) of the total amount of the payment, which may include, but shall not be limited to Interest, principal, escrow for taxes and/or insurance after the fifth (5th) calendar day of the month in which it is due. There shall be an additional ten percent (10%) penalty added if the payment is made after the twentieth (20th) calendar day of the month in which it is due. I will pay the late charge due hereunder promptly with the making of the payment and the failure to pay the late charge shall entitle the Note Holder to either decline the payment or to accept the amount paid and declare a default hereunder. I agree that this late charge is a fair and reasonable estimate of the damages that the Note holder will incur as a result of my payment being late.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, or if I fail to make any other payment due hereunder or under the terms of the Security Instrument (as hereinafter defined) in a timely manner, or I fail to make any perform any terms or provisions contained in any other present or future agreement between me and the Note Holder, then I shall be in default hereunder. In the event I shall be in default hereunder or under the terms of the Security Instrument (as hereinafter defined) then the entire principal balance due hereunder, together with any accrued and unpaid interest and other charges, shall, at the option of the Note Holder, and without further notice to the undersigned, become immediately due and payable and may be collected forthwith, *time being of the essence hereunder*. It is further agreed that the failure of the Note Holder to exercise this right to accelerate the maturity of the indebtedness, or any indulgence granted from time to time, shall in no event be considered as a waiver of the right to accelerate the indebtedness in the future or stop the Note Holder from exercising its rights as against any other default.

In addition to the failure to make payments, if the Maker shall default under the Master Security Agreement, the Mortgage and Security Agreement any other note, loan, agreement, mortgage, obligation or indebtedness secured by the Premises, due from him to any person, entity, corporation, partnership or business, including the Note Holder, or to any assignee of the Note Holder, whether said indebtedness, obligation, loan, mortgage or agreement presently exists or arises at any time during the term hereof or any renewal hereof or at any time in which the indebtedness evidenced hereby shall not have been paid in full then Maker shall be in default hereunder.

(C) Payment of Note Holder's Costs and Expenses

If I am in default hereunder and the Note Holder accelerates the indebtedness and requires me to pay in full immediately, the Note Holder will have the right to be paid back by me for all of its costs and expenses incurred in enforcing this Promissory Note to the extent permitted by applicable law. Those expenses include, but are not limited to reasonable attorney's fees, and other charges due hereunder, advertising costs, title examinations costs, costs of appraisals, and filing fees.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Promissory Note, each person is fully liable to keep all of the promises and agreements set forth herein, including, but not limited to, full payment of the indebtedness, interest and other charges due hereunder. Any person, who is a guarantor, surety or endorser of this Promissory Note, whether same is set forth on the face hereof or not, is also fully obligated hereunder. Any person who assumes the obligations contained in this Promissory Note, including the obligations of a

Initials

3 of 6

guarantor, surety or endorser of this Promissory Note, is also obligated to perform all of the promises contained herein, including the obligation for full payment of the indebtedness. The consent by the Note Holder to an assumption of liability hereunder (which consent Note Holder has no obligation to give at any time) shall not release the undersigned from liability under this Promissory Note. This Note Holder may enforce its rights under this Promissory Note against any of the undersigned individually or jointly, in its sole discretion and each of the undersigned understand that they are individually liable for all amounts due hereunder.

## 7. SECURITY

The undersigned has, simultaneously herewith conveyed to the Lender, as security for the repayment of the indebtedness evidenced hereby and as security for all of the obligations contained herein a security interest in the Collateral described in the Master Security Agreement from Maker to Lender of even date herewith, including but not limited to a security interest in and a first mortgage lien upon certain improved real property (the "Property") commonly known as 594 Andover Street, Chicago Heights, IL. 60411: (SEE ATTACHED EXHIBIT A FOR LEGAL DESCRIPTION). The Property is more particularly described in a Mortgage and Security Agreement from Maker to Lender of even date herewith (the "Security Instrument").

## 8. COMMERCIAL USE

As a material inducement to the Lender to make the loan which is evidenced by this Promissory Note, I hereby warrant and represent that the Property is not my primary residence but is either commercial property or residential property used for investment purposes only. I hereby represent and warrant that the proceeds of the loan evidenced hereby will be used for the purpose specified in Section 205/4 of Chapter 815 of the Illinois Compiled Statutes, as amended, and that the indebtedness evidenced hereby constitutes a "business loan" within the purview of that section. I hereby also represent and warrant that the loan evidenced hereby is not primarily for personal, family or household purposes and is not being made in connection with the issuance of a credit card, and that the indebtedness evidenced hereby therefore constitutes a "credit agreement" within the purview of Section 160/1 of Chapter 815 of the Illinois Compiled Statutes, as amended.

## 9. ASSUMPTION

Notwithstanding anything to the contrary contained herein, this Note and the payment of the indebtedness evidenced hereby and secured by the Security Instrument may not be assumed by anyone without the prior written consent of the Lender which consent Lender may withhold.

## 10. CHOICE OF LAWS

This Note is intended as a contract under and shall be construed and enforceable in accordance with the laws of the State of Illinois.

## 11. WAIVERS

Presentment for payment, demand, protest and notice of demand, notice of dishonor and notice of non-payment and all other notices are hereby waived by Maker. No failure to accelerate the debt evidenced hereby by reason of a default hereunder, acceptance of a past due installment, or indulgences granted from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or of the right of Holder thereafter to insist upon strict compliance with the terms of this Note, or (ii) to prevent the exercise of such right of acceleration or any other right granted hereunder or by the laws of the State of Illinois; and Maker hereby expressly waives the benefit of any statute or rule of law or equity now provided, or which may hereafter

Initials

be provided, which would produce a result contrary to or in conflict with the foregoing. No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Note shall operate to release, discharge, modify, change or affect the original liability of Maker under this Note, either in whole or in part, unless Holder agrees otherwise in writing. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought. Notwithstanding anything to the contrary contained herein, Maker and each of them individually shall be and are hereby jointly and severally liable for the entire indebtedness due hereunder.

Maker hereby waives and renounces for himself, his heirs, successors and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, exemption and homestead now provided, or which may hereafter be provided, by the Constitution and laws of the United States of America and of any state thereof, both as to himself and in and to all of his property, real and personal, against the enforcement and collection of the obligations evidenced by this Note. Maker hereby conveys, conveys and assigns to Holder a sufficient amount of such homestead or exemption as may be set apart in bankruptcy, to pay this Note in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Holder a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby, or any renewal thereof, and does hereby appoint Holder the attorney-in-fact for Maker to claim any and all homestead exemptions allowed by law.

## 12. WARRANT OF POWER OF ATTORNEY TO CONFESS JUDGMENT

To secure the payment of this obligation, I irrevocably authorize any attorney of any court of record in the United States to appear for me, in any court of competent jurisdiction, at any time after the signing of this Note, and to confess judgment against me, without process, in favor of the holder of this note or its assignees, for such amount as may appear to be unpaid on it, together with costs and reasonable attorneys' fees, and also to file a confession of judgment for the total amount with an agreement waiving and releasing all errors which may intervene in any such proceeding, waiving all right of appeal in the cause, and agreeing that no action shall be filed to interfere with the operation of the judgment or any enforcement of the judgment, and consenting to an immediate enforcement of the judgment, and to waive and release all errors which may intervene in any such proceeding and consent to immediate enforcement of the judgment that is entered.

I acknowledge receipt of a copy of this Promissory Note.

CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS PROMISSORY NOTE BEFORE SIGNING.

WITNESS THE HAND AND SEAL OF THE UNDERSIGNED THE DAY AND YEAR FIRST ABOVE WRITTEN:

BORROWER:

_____

Barry T. Haywood

Subscribed and sworn to before me
this January 18, 2007.

_____
NOTARY PUBLIC:

OFFICIAL SEAL
KIM CALACE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:01/05/09

Initials _BH_

**EXHIBIT A**

**LEGAL DESCRIPTION**

LOT 10 IN BLOCK 2 OF BEACON HILLS, A SUBDIVISION OF PART OF
SECTIONS 19,20,29 AND 30, TOWNSHIP 35 NORTH, RANGE 14, EAST OF THE
THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

PIN # 32-30-108-010-0000

Initials *BH*

FileName: BARRY HAYWOOD
AccountNo. ████6647
FDIC Control No. ████6647
Custodian ID No. ████3121
AMONo. ████039

## ALLONGE

THIS ALLONGE IS TO BE ATTACHED TO AND MADE AN INTEGRAL PART of the following instrument:

      Note (and any amendments, modifications or changes thereto): Commercial Promissory Note
      Dated: January 18, 2007
      Payable by: BARRY T. HAYWOOD, an individual
      Payable to the Order of: OMNI NATIONAL BANK
      Original Principal Amount: Sixty-Nine Thousand and 00/100 Dollars ($69,000.00)

PAY TO THE ORDER MULTIBANK 2009-1 RES-ADC VENTURE, LLC, A DELAWARE LIMITED LIABILITY COMPANY, WITHOUT RECOURSE AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED OR BY OPERATION OF LAW, OF ANY KIND AND NATURE WHATSOEVER.

                    **FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR OMNI NATIONAL BANK**

                    By: *Vanessa A. Orta*

                    Name:  Vanessa A. Orta
                    Title:   Attorney-in-Fact

Dated as of February 9, 2010

81186647

Doc#: ▮▮▮▮5054 Fee: $60.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 01/24/2007 04:05 PM Pg: 1 of 19

RECORDING REQUESTED BY
AND AFTER RECORDING PLEASE
RETURN TO:

OMNI NATIONAL BANK
ATTN: CARLA EUBANKS
King Tower
Six Concourse Parkway, Suite 2300
Atlanta, Georgia 30328

# MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE AND SECURITY AGREEMENT (this "mortgage"), made on January 18, 2007 by Barry T. Haywood of 10705 S. Roberts Rd., Palos Hills, IL. a single man 60465, ("Mortgagor"), to Omni National Bank, whose office address is King Tower, Six Concourse Parkway, Atlanta, GA 30328 ("Mortgagee").

RECITALS

LASALLE TITLE
FILE #. 07390817 ya

Mortgagor is justly indebted to Mortgagee, having executed and delivered to Mortgagee its Commercial Promissory Note (Interest Only) (the "note") bearing even date herewith, in the original principal sum of $69,000.00 (Sixty Nine Thousand Dollars) (the "loan") or so much as has been advanced and remains outstanding, lawful money of the United States of America, and according to the terms and conditions specified in the note executed this same date.

In consideration of the indebtedness and to secure the payment to Mortgagee of the principal with interest and all other sums provided for in the note and in this mortgage, including, but not limited to, any future advances that may be made by Mortgagee to Mortgagor in accordance with Paragraph 24 hereof, up to the maximum amount stated therein, and for performance of the agreements, conditions, covenants, provisions, and stipulations contained herein and therein, and in certain other agreements and instruments made and given by Mortgagor to Mortgagee in connection with the loan, Mortgagor has granted, bargained, sold, and conveyed, and by these presents does assign, grant, mortgage, warrant, bargain, sell, and convey, unto Mortgagee that tract or parcel of land in Cook County, Illinois, more particularly described and set forth in **Exhibit "A"** attached and made part hereof (the "land");

TOGETHER with all the tenements, hereditaments, easements, appurtenances, passages, waters, water courses, riparian rights, other rights, liberties, and privileges thereof or in any way now or hereafter appertaining, including any other claim at law or in equity as well as any after acquired title, franchise, or license and the reversions and remainders thereof; and

19
4C

Initials 

TOGETHER with all buildings and improvements of every kind and description now or hereafter erected or placed thereon and all materials intended for construction, reconstruction, alteration, and repairs of such improvements now or hereafter erected thereon, all of which materials shall be deemed to be included within the mortgaged mortgaged property immediately upon the delivery thereof to such mortgaged property, and all fixtures and articles of personal property now or hereafter owned by Mortgagor and attached to or contained in and used in connection with said mortgaged property, including but not limited to all apparatus, machinery, motors, elevators, fittings, radiators, gas ranges, ice boxes, mechanical refrigerators, awnings, shades, screens, Venetian blinds, office equipment and other furnishings; all plumbing, heating, lighting, cooking, laundry, ventilating, refrigerating, incinerating, air-conditioning, hot water heating and sprinkler equipment and fixtures and appurtenances thereto and all built-in equipment and built-in furniture; and all renewals or replacements thereof or articles in substitution therefore, whether or not the same are or shall be attached to said land or building or buildings in any manner; it being mutually agreed that all the aforesaid property owned by said Mortgagor and placed by it on said mortgaged property shall, so far as permitted by law, be deemed to be affixed to the realty and covered by this mortgage. Such tract or parcel of land and buildings, improvements, fixtures, machinery, equipment, tenements, personal property, and property interests being hereinafter collectively called the "mortgaged property."

TO HAVE AND TO HOLD the above-granted and described mortgaged property to Mortgagee, its successors and assigns, forever.

And Mortgagor hereby represents, warrants, and covenants with Mortgagee that Mortgagor is indefeasibly seized of the mortgaged property in fee simple; that Mortgagor has full power and lawful right to convey the same in fee simple as aforesaid; that it shall be lawful for Mortgagee at all times peaceably and quietly to enter on, hold, occupy, and enjoy the mortgaged property and every part thereof; that the mortgaged property is free from all liens and encumbrances, except as set forth on **Exhibit "B"** attached hereto and made a part hereof, that all property, fixtures, and equipment described herein will be fully paid for and free from all liens, encumbrances, title retaining contracts, and security interests when delivered and/or installed on the mortgaged property; that such property, fixtures, and equipment shall be deemed to be realty and a part of the freehold; that Mortgagor will make such further assurances to prove the fee simple title to all and singular the mortgaged property in Mortgagee and to prove the lien and priority of this mortgage, as may be reasonably required, and that Mortgagor does hereby and will forever fully warrant and defend the lien and priority of this mortgage and the title to the mortgaged property and every part thereof against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS, and these presents are on the express condition that, if Mortgagor or the successors or assigns of Mortgagor shall pay unto Mortgagee, its successors or assigns, the sums of money secured hereby, and any renewals or extensions thereof in whatever form, and the interest thereon as it shall become due, according to the true intent and meaning thereof, together with all advances hereunder, costs, charges, and

Initials _____

expenses, including reasonable attorneys' fees, which Mortgagee may incur or be put to in collecting the same by foreclosure or otherwise; and shall duly, promptly and fully perform, discharge, execute, effect, complete, comply with, and abide by each and every one of the stipulations, agreements, conditions, and covenants of the note, this mortgage, and other documents or instruments given by Mortgagor to Mortgagee in connection herewith,

THEN this mortgage and the estate hereby created shall cease and be NULL AND VOID and this instrument shall be released by Mortgagee, at the cost and expense of Mortgagor.

MORTGAGOR COVENANTS AND AGREES to and with Mortgagee that, until the indebtedness secured hereby is fully repaid:

1.    Payment and Performance:    Mortgagor shall pay Mortgagee, in accordance with the terms of the note and this mortgage, the principal, interest, and other sums therein set forth; and Mortgagor shall perform and comply with all the agreements, conditions, covenants, provisions, and stipulations of the note and this mortgage, the terms of which are incorporated herein by reference.

2.    Interest Rate:  Notwithstanding any provision contained in this mortgage or in the note secured hereby, the total liability for payment of interest, or in the nature of interest, shall not exceed the limits now imposed by the applicable usury law, including the applicable choice of law rules.  In the event of the acceleration of the note hereby secured, the total charges for interest and in the nature of interest shall not exceed the maximum amount allowed by law; any excess portion of such charges that may have been prepaid shall be refunded to the maker thereof.  Such refund may be made by application of the amount involved against the sums then due hereunder, but such crediting shall not cure or waive the default occasioning acceleration.  Nothing herein contained nor in any transaction related hereto shall be construed or shall so operate either presently or prospectively to require Mortgagor to make any payment or do any act contrary to law, but, if any clause and provision herein contained shall otherwise so operate to invalidate this mortgage, in whole or in part, then such clauses and provisions only shall be held for naught as though not herein contained and the remainder of this Mortgage shall remain operative and in full force and effect.

3.    Maintenance of Mortgaged Property:  Mortgagor shall abstain from and shall not permit the commission of waste, impairment, or deterioration in or about the mortgaged property; Mortgagor shall not remove, demolish, or alter the structural character of any building erected at any time on the mortgaged property, without the prior written consent of Mortgagee; Mortgagor shall not permit the mortgaged property to become vacant, deserted, or unguarded; and Mortgagor shall maintain the mortgaged property in good condition and repair, reasonable wear and tear excepted.

4.    Insurance:  Mortgagor shall keep the mortgaged property continuously insured against loss or damage by fire, with extended coverage, and against other hazards

Initials 

3 of 17

as Mortgagee may reasonably require, with public liability insurance and property damage insurance, with an insurance company or companies satisfactory to Mortgagee and in such total amounts as Mortgagee may require from time to time. All policies, including policies for any amounts carried in excess of the required minimum and policies not specifically required by Mortgagee, shall be in form satisfactory to Mortgagee; shall be maintained in full force and effect; shall be assigned and delivered to Mortgagee at or prior to closing, with premiums prepaid, as collateral security for payment of the indebtedness secured hereby; shall be endorsed with a standard mortgagee clause in favor of Mortgagee as first Mortgagee, not subject to contribution; and shall provide for at least 30 days' notice of cancellation to Mortgagee. If the insurance, or any part thereof, shall expire, be withdrawn, or become void or unsafe by Mortgagor's breach of any condition thereof, or become void or unsafe by reason of the failure or impairment of the capital of any company in which the insurance may then be carried, or, if for any reason whatever the insurance shall be unsatisfactory to Mortgagee, Mortgagor shall place new insurance on the mortgaged property, satisfactory to Mortgagee. All renewal policies, with premiums paid, shall be delivered to Mortgagee at least 30 days before expiration of the old policies. In the event of loss, Mortgagor will give immediate notice thereof to Mortgagee, and Mortgagee may make proof of loss if not made promptly by Mortgagor. Each insurance company concerned is hereby authorized and directed to make payment under such insurance, including return of unearned premiums, directly to Mortgagee instead of to Mortgagor and Mortgagee jointly, and Mortgagor appoints Mortgagee, irrevocably, as Mortgagor's attorney-in-fact to endorse any draft therefore. At its election, Mortgagee shall have the right to retain and apply the proceeds of any such insurance to reduction of the indebtedness secured hereby, or to restoration or repair of the property damaged. If Mortgagee becomes the owner of the mortgaged property or any part thereof by foreclosure or otherwise, such policies, including all right, title, and interest of the Mortgagor thereunder, shall become the absolute property of Mortgagee.

5.    Taxes and Other Charges:  Mortgagor shall pay, when due and payable and before interest or penalties are due thereon, without any deduction, defalcation, or abatement, all taxes, assessments, levies, liabilities, obligations, encumbrances, water and sewer rents, and all other charges or claims of every nature and kind that may be imposed, suffered, placed, assessed, levied, or filed at any time against Mortgagor, against the mortgaged property or any part thereof, or against the interest of Mortgagee therein; or that by any present or future law may have priority over the indebtedness secured hereby either in lien or in distribution out of the proceeds of any judicial sale, without regard to any law heretofore or hereafter to be enacted imposing payment of the whole or of any part on Mortgagee. Insofar as any such tax, assessment, levy, liability, obligation, or encumbrance is of record, the same shall be promptly satisfied and discharged of record, and the original official document (such as, for instance, the tax receipt or the satisfaction paper officially endorsed or certified) shall be placed in the hands of Mortgagee not later than such dates. Provided, however, that if, pursuant to the note or otherwise, Mortgagor shall have deposited with Mortgagee before the due date thereof sums sufficient to pay any such taxes, assessments, levies, water and sewer rents, charges, or claims, and Mortgagor is not otherwise in default, they shall be paid by Mortgagee; and provided further, that if Mortgagor in good faith and by appropriate legal

Initials _BMK_

4 of 17

action shall contest the validity of any such item or the amount thereof and shall have established on its books or by deposit of cash with Mortgagee, as Mortgagee may elect, a reserve for the payment thereof in such amount as Mortgagee may require, then Mortgagor shall not be required to pay the item or to introduce the required receipts: (a) while the reserve is maintained; and (b) as long as the contest operates to prevent collection, is maintained and prosecuted with diligence, and shall not have been terminated or discontinued adversely to Mortgagor.

6.    <u>Installments for Insurance, Taxes, and Other Charges:</u>  Without limiting the effect of Paragraphs 4 and 5 hereof, Mortgagor shall pay to Mortgagee, if required, monthly with the monthly installments of principal and interest, an amount equal to one-twelfth of the annual premiums for the insurance policies referred to hereinabove and the annual real estate taxes; water and sewer rents; any special assessments, charges, or claims; and any other item that at any time may be or become a lien on the mortgaged property prior to the lien of this mortgage; and, on demand from time to time, Mortgagor shall pay to Mortgagee any additional sums necessary to pay the premiums and other items, all as estimated by Mortgagee; the amounts so paid shall be security for the premiums and other items and shall be used in payment thereof if Mortgagor is not otherwise in default hereunder.  No amount so paid shall be deemed to be trust funds but may be commingled with general funds of Mortgagee, and no interest shall be payable thereon.  If, pursuant to any provision of this mortgage, the whole amount of the unpaid principal debt becomes due and payable, Mortgagee shall have the right, at its election, to apply any amount so held against the entire indebtedness secured hereby.  At Mortgagee's option, Mortgagee from time to time may waive, and after any such waiver may reinstate, the provisions of this paragraph requiring the monthly payments.

7.    <u>Future Taxes:</u>  If hereafter any law or ordinance shall be adopted imposing a tax directly or indirectly on Mortgagee with respect to the mortgaged property, the value of Mortgagor's equity therein, or the indebtedness evidenced by the note and secured by this mortgage (other than state or federal income taxes imposed on Mortgagee), Mortgagee, at its election, shall have the right at any time to give Mortgagor written notice declaring that the principal debt, with interest and other appropriate charges, shall be due on a specified date not less than forty-five (45) days thereafter; provided, however, that such election shall be ineffective if, prior to the specified date, Mortgagor lawfully pays the tax (in addition to all other payments required hereunder) and agrees to pay the tax whenever it becomes due and payable thereafter, which agreement shall then constitute a part of this mortgage.

8.    <u>Security Agreement:</u>  This mortgage constitutes a security agreement under the Uniform Commercial Code and creates a security interest in the personal property included in the mortgaged property.  Mortgagor shall execute, deliver, file, and refile any financing statements or other security agreements Mortgagee may require from time to time to confirm the lien of this mortgage with respect to such property.  Without limiting the foregoing, Mortgagor hereby irrevocably appoints Mortgagee attorney-in-

Initials 

fact for Mortgagor to execute, deliver, and file such instruments for and on behalf of Mortgagor.

Mortgagor warrants that (i) Mortgagor's (that is, "Debtor's") name, identity or corporate structure and residence or principal place of business are as set forth in preamble hereof; (ii) Mortgagor (that is, "Debtor") has been using or operating under said name, identity or corporate structure without change for the time period set forth in this Section 8, and (iii) the location of the collateral is upon the land. Mortgagor covenants and agrees that Mortgagor will furnish Mortgagee (that is, "Secured Party") with notice of any change in the matters addressed by clauses (i) or (iii) of this paragraph within thirty (30) days of the effective date of any such change and Mortgagor will promptly execute any financing statements or other instruments deemed necessary by Mortgagee to prevent any filed financing statement from becoming misleading or losing its perfected status.

The information contained in this paragraph is provided in order that this mortgage shall comply with the requirements of the Uniform Commercial Code, as enacted in the State of Illinois, for instruments to be filed as financing statements. The names of the "Debtor" and the "Secured Party", the identity or corporate structure and residence or principal place of business of "Debtor", and the time period for which "Debtor" has been using or operating under said name and identity or corporate structure without change, are as set forth herein, the mailing address of the "Secured Party" from which information concerning the security interest may be obtained, and the mailing address of "Debtor", are as set forth herein, and a statement indicating the types, or describing the items, of collateral is as follows: all of the mortgaged property located on the land.

9.    Limitation on Additional Financing:    Mortgagor shall not undertake additional financing secured by any lien or security interest on property encumbered in favor of Mortgagee to secure the loan without first obtaining Mortgagee's written consent. Any violation of the foregoing limitation shall, at the option of Mortgagee, be deemed an event of default hereunder.

10.    Compliance with Law and Regulations:    Mortgagor shall comply with (and shall cause the mortgaged property to comply with) all laws, ordinances, regulations, and orders of all federal, state, municipal, and other governmental authorities relating to the mortgaged property.

11.    Inspection:    Mortgagee and any persons authorized by Mortgagee shall have the right at any time, upon reasonable notice to Mortgagor, to enter the mortgaged property at a reasonable hour to inspect and photograph its condition and state of repair.

12.    Declaration of No Setoff:    Within one week after requested to do so by Mortgagee, Mortgagor shall certify to Mortgagee or to any proposed assignee of this mortgage, in a writing duly acknowledged, the amount of principal, interest, and other charges then owing on the obligation secured by this mortgage and whether there are any

Initials

setoffs or defenses against it, and, if such setoffs or defenses are asserted, a detailed explanation thereof.

13.  Financial Statements:  Within forty-five (45) days after the end of each fiscal year of Mortgagor during the term of this mortgage, Mortgagor shall deliver to Mortgagee a statement of gross income and expenses, showing profit and loss and surplus for the preceding fiscal year relating to the operation of the mortgaged property by Mortgagor, and a balance sheet produced at the end of such fiscal year, all in reasonable detail and certified by an independent public accountant acceptable to Mortgagee. Mortgagor agrees to make the books and accounts relating to the mortgaged property available for inspection by Mortgagee, or its representatives, upon request at any reasonable time.

14.  Required Notices:  Mortgagor shall notify Mortgagee promptly of the occurrence of any of the following:

(a)    a fire or other casualty causing damage to the mortgaged property;

(b)    receipt of notice of condemnation of the mortgaged property;

(c)    receipt of notice from any governmental authority relating to the structure, use, or occupancy of the mortgaged property;

(d)    substantial change in the occupancy of the mortgaged property; or

(e)    commencement of any litigation affecting the mortgaged property.

15.  Condemnation:

(a)    In the event of any condemnation or taking of any part of the mortgaged property by eminent domain, alteration of the grade of any street, or other injury to or decrease in the value of the mortgaged property by any public or quasi-public authority or corporation, all proceeds (that is, the award or agreed compensation for the damages sustained) allocable to Mortgagor shall be applicable first to payment of the indebtedness secured hereby. No settlement for the damages sustained shall be made by Mortgagor without Mortgagee's prior written approval, which shall not be withheld unreasonably. Mortgagor shall continue to pay the installments of principal, interest, and other charges until payment of the proceeds shall have been received by Mortgagee in the full amount secured hereunder. All the proceeds shall be applied in the order and in the amounts that Mortgagee, in Mortgagee's sole discretion, may elect, to the payment of principal (whether or not then due and payable); to the payment of interest or any sums secured by this mortgage; or toward payment to Mortgagor, on such reasonable terms as Mortgagee may specify, to be used for the sole purpose of altering, restoring, or rebuilding any part of the mortgaged property

Initials _____

that may have been altered, damaged, or destroyed as a result of the taking, alteration of grade, or other injury to the mortgaged property.

(b)     If, prior to the receipt of the proceeds by Mortgagee, the mortgaged property is sold on foreclosure of this mortgage, Mortgagee shall have the right to receive the proceeds to the extent of:

(i)     any deficiency found to be due to Mortgagee in connection with the foreclosure sale, with legal interest thereon, and

(ii)     reasonable counsel fees, costs, and disbursements incurred by Mortgagee in connection with collection of the proceeds and the proceedings to establish the deficiency.

(c)     If the amount of the initial award of damages for the condemnation is insufficient to pay in full the indebtedness secured hereby with interest and other appropriate charges, Mortgagee shall have the right to prosecute to final determination or settlement an appeal or other appropriate proceedings in the name of Mortgagee or Mortgagor, for which Mortgagee is hereby appointed irrevocably as attorney-in-fact for Mortgagor, which appointment, being for security, is irrevocable. In that event, the expenses of the proceedings, including reasonable counsel fees, shall be paid first out of the proceeds, and only the excess, if any, paid to the Mortgagee shall be credited against the amounts due under this mortgage.

(d)     Nothing herein shall limit the rights otherwise available to Mortgagee, at law or in equity, including the right to intervene as a party to any condemnation proceeding.

16.     No Leases:  Mortgagor hereby represents that there are no leases or agreements to lease all or any part of the mortgaged property now in effect, except as previously disclosed by Mortgagor to Mortgagee.

17.     Conveyance:  Without the prior written consent of Mortgagee, Mortgagor will abstain from and will not cause or permit any sale, exchange, transfer, or conveyance of the mortgaged property or any part thereof, voluntarily or by operation of law (other than by execution on the note or foreclosure under this mortgage), or any transfer of shares of stock or control in Mortgagor, whether by sale, exchange, conveyance, merger, consolidation, or otherwise. Any violation of the foregoing limitations, at the option of Mortgagee, shall be deemed an event of default hereunder.

18.     Right to Remedy Defaults:  If Mortgagor fails to pay real estate or other taxes, assessments, water and sewer rents, charges and claims, or sums due under any prior lien or insurance premiums; fails to make necessary repairs; or permits waste, Mortgagee, at its election and without notice to Mortgagor, shall have the right to make any payment or expenditure and to take any action that Mortgagor should have made or

Initials _____

taken or which Mortgagee deems advisable to protect the security of this mortgage or the mortgaged property, without prejudice to any of Mortgagee's rights or remedies available hereunder or otherwise, at law or in equity. All such sums and costs advanced by Mortgagee pursuant to this mortgage shall be due immediately from Mortgagor to Mortgagee, shall be secured hereby, and shall bear interest at a rate that shall be the maximum rate allowed by law. Mortgagee shall be subrogated to any rights, equities, and liens so discharged.

19.    Events of Default:    The following shall constitute events of default hereunder:

(a)    Failure of Mortgagor to pay any installment of principal or interest, or any other sum, within 5 days after the date it is due under the note or this mortgage.

(b)    Mortgagor's nonperformance of or noncompliance with the Master Security Agreement or any other agreements, conditions, covenants, provisions, or stipulations contained in the note or in this mortgage, or in any other document securing such note, and the continuation of such nonperformance or noncompliance for 30 days after notice thereof from Mortgagee to Mortgagor.

(c)    Any assignment for the benefit of creditors made by Mortgagor, any shareholder of Mortgagor, or the person executing the guaranty of even date herewith given to Mortgagee in connection with the loan.

(d)    Appointment of a receiver, liquidator, or trustee of Mortgagor (which term for the purposes of this subparagraph (d) shall be deemed to include any shareholder of Mortgagor) or of any of the property of Mortgagor; insolvency of Mortgagor or the adjudication of Mortgagor as bankrupt; the filing by Mortgagor of any petition for the bankruptcy, reorganization, or arrangement of Mortgagor pursuant to the Federal Bankruptcy Act or any similar statute; the institution by Mortgagor of any proceeding for the dissolution or liquidation of Mortgagor; or the filing against Mortgagor of any such petition or institution against Mortgagor of such proceedings, unless the same be discharged within 30 days after the filing or institution.

(e)    The rendering by any court of last resort of a decision that an undertaking by Mortgagor (as herein provided) to pay any tax, assessment, levy, liability, obligation, or encumbrance is legally inoperative or cannot be enforced, or the passage of any law changing in any way or respect the laws now in force for the taxation of mortgages or debts secured thereby for any purpose, or the manner of collection of any such tax, so as to affect this mortgage or the debt secured hereby.

(f)    Mortgagor's failure to perform, keep, or observe any material term, provision, condition, or covenant contained in any other present or future agreement between Mortgagor and Mortgagee.

Initials 

20. <u>Remedies:</u>

(a)    Upon the happening of any event of default, this conveyance shall become absolute, and the entire unpaid balance of the principal, the accrued interest, and all other sums secured by this mortgage shall become immediately due and payable, at the option of Mortgagee, without notice or demand.

(b)    When the entire indebtedness shall become due and payable because of maturity, the occurrence of any event of default, or otherwise, then forthwith:

(i)    <u>Foreclosure:</u> Mortgagee may institute an action to foreclose this mortgage against the mortgaged property or take such other action at law or in equity for the enforcement of this mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the principal debt, with interest at the rate stipulated in the note to the date of default, and, thereafter, at a rate that shall be the rate specified in the note at the time of default, together with all other sums due by Mortgagor in accordance with the provisions of the note and this mortgage, including all sums that may have been lent by Mortgagee to Mortgagor after the date of this mortgage, and all sums that may have been advanced by Mortgagee for taxes, water or sewer rents, charges or claims, payments on prior liens, or insurance or repairs to the mortgaged property, and all costs of suit, together with interest at such rate on any judgment obtained by Mortgagee from and after the date of any foreclosure sale until actual payment is made of the full amount due Mortgagee and of an attorney's commission for collection; or Mortgagee may foreclose only as to the sum past due with interest and costs, as above provided, without injury to this mortgage or the displacement or impairment of the remainder of the lien thereof, and, at such foreclosure sale, the mortgaged property shall be sold subject to all remaining items of indebtedness; and Mortgagee may again foreclose, in the same manner, as often as there may be any sum past due; or

(ii)    <u>Possession:</u> Mortgagee may take possession of the mortgaged property either as a mortgagee in possession or through the appointment of a receiver pursuant to the applicable provisions of the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1101 <u>et seq.</u> (the "Illinois Mortgage Foreclosure Law"). Mortgagee may enter into possession of the mortgaged property with or without legal action and by force, if necessary. Mortgagee may then collect therefrom all rentals (which term also shall include sums payable for use and occupation) and, after deducting all costs of collection and administration expenses, apply the net rentals to any or all of the following in such order and amounts as Mortgagee, in Mortgagee's sole discretion, may elect: the payment of

Initials 

taxes, water and sewer rents, charges and claims, insurance premiums, and all other carrying charges; and to the maintenance, repair, or restoration of the mortgaged property; and on account and in reduction of the principal or interest, or both, hereby secured. In and for that purpose, Mortgagor hereby assigns to Mortgagee all rentals due and to become due under any lease or leases or rights to use and occupation of the mortgaged property hereafter created, as well as all rights and remedies provided in such lease or leases or at law or in equity for the collection of the rentals. Mortgagee's entitlement to the appointment of a receiver of all the rents, issues, and profits, exists as matter of strict right, regardless of the value of the mortgaged property and the solvency or insolvency of Mortgagor and other persons liable to pay such indebtedness.    Mortgagor hereby specifically waives the right to object to the appointment of a receiver as aforesaid and hereby expressly consents that such appointment shall be made as an admitted equity and that the same may be done without notice to Mortgagor.   Mortgagor also hereby specifically waives the right to object to Mortgagee's taking possession of the mortgaged property as a mortgagee in possession and hereby expressly consents that Mortgagee may take possession in such a manner as an admitted equity and that the same also may be done without notice to Mortgagor.   Mortgagor also specifically acknowledges that the mortgaged property is not "residential real estate" as that term is defined in the Mortgage Foreclosure Law.

(c)     Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Mortgagor under the terms of this mortgage, as they become due, without regard to whether the principal indebtedness or any other sums secured by the note and this mortgage shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action to foreclose this mortgage, or any other action, for any default by Mortgagor existing at the time the earlier action was commenced.

(d)     Any real estate sold pursuant to any action to foreclose this mortgage or pursuant to any other judicial proceedings under this mortgage or the note, may be sold in one parcel, as an entirety, or in such parcels or condominium units, and in such manner or order as Mortgagee, in its sole discretion, may elect.

(e)     Proceeds of any foreclosure sale of the mortgaged property shall be distributed and applied in the following order of priority:  (i) on account of all costs and expenses incident to the foreclosure proceedings, (ii) all other items which, under the terms hereof, constitute secured indebtedness additional to that evidenced by the note, with interest thereon, (iii) all principal and interest, if any, remaining unpaid on the note, and (iv) any surplus or remaining funds to Mortgagor, its successors or assigns, as their rights may appear.

Initials _____

21. <u>Rights and Remedies Cumulative:</u>

(a)    The rights and remedies of Mortgagee as provided in the note and in this mortgage shall be cumulative and concurrent; may be pursued separately, successively, or together against Mortgagor, the mortgaged property, or both, at the sole discretion of Mortgagee; and may be exercised as often as occasion therefor shall arise. The failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

(b)    Any failure by Mortgagee to insist on strict performance by Mortgagor of any of the terms and provisions of this mortgage or the note shall not be deemed to be a waiver of any of the terms or provisions thereof, and Mortgagee shall have the right thereafter to insist on strict performance by Mortgagor of any and all of them.

(c)    Neither Mortgagor nor any other person now or hereafter obligated for payment of all or any part of the sums now or hereafter secured by this mortgage shall be relieved of such obligation by reason of the failure of Mortgagee to comply with any request of Mortgagor or of any other person so obligated to take action to foreclose on this mortgage or otherwise enforce any provisions of the mortgage or the note; by reason of the release, regardless of consideration, of all or any part of the security held for the indebtedness secured by this mortgage; or by reason of any agreement or stipulation between any subsequent owner of the mortgaged property and Mortgagee extending the time of payment or modifying the terms of the mortgage or note without first having obtained the consent of Mortgagor or such other person. In the latter event, Mortgagor and all such other persons shall continue to be liable to make payments according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Mortgagee.

(d)    Mortgagee may release, regardless of consideration, any part of the security held for the indebtedness secured by this mortgage without, as to the remainder of the security, in any way impairing or affecting the lien of this mortgage or its priority over any subordinate lien.

(e)    For payment of the indebtedness secured hereby, Mortgagee may resort to any other security therefore held by Mortgagee in such order and manner as Mortgagee may elect.

22. <u>Mortgagor's Waivers:</u> Mortgagor hereby waives and releases:

(a)    all errors, defects, and imperfections in any proceeding instituted by Mortgagee under the note, this mortgage, or both of them;

Initials 

(b) all benefit that might accrue to Mortgagor by virtue of any present or future appraisement, valuation, stay, extension, homestead or exemption laws or any so-called "Moratorium Laws," now existing or hereafter enacted, in order to prevent or hinder the enforcement of foreclosure of the lien of this mortgage. Mortgagor also waives any and all right to have the property and estates comprising the mortgaged property marshaled upon any foreclosure of the lien of this mortgage and agrees that any court having jurisdiction to foreclose this lien may order the mortgaged property sold as an entirety. Mortgagor further expressly waives any and all rights of reinstatement or of redemption from sale under any order or judgment of foreclosure of the lien of this mortgage on behalf of Mortgagor; and

(c) unless specifically required herein, all notices of Mortgagor's default or of Mortgagee's election to exercise or Mortgagee's actual exercise of any option under the note or this mortgage.

23.     Attorneys' Fees: If Mortgagee becomes a party to any suit or proceeding affecting the mortgaged property or title thereto, the lien created by this mortgage or Mortgagee's interest therein, or, if Mortgagee engages counsel to collect any of the indebtedness or to enforce performance of the agreements, conditions, covenants, provisions, or stipulations of this mortgage or the note, Mortgagee's costs, expenses, and reasonable attorneys' fees, whether or not suit is instituted, shall be paid to Mortgagee by Mortgagor on demand with interest at the then effective rate set forth in the note, and, until paid, these amounts of money shall be deemed to be part of the indebtedness evidenced by the note and secured by this mortgage.

24.     Future Advances: Pursuant to the Law of the State of Illinois, this mortgage shall secure not only the existing indebtedness evidenced by the note but also such future advances as may be made by Mortgagee to Mortgagor within 20 years from the date hereof to the same extent as if such future advances were made on the date of the execution of this mortgage. The total amount of indebtedness that shall be so secured by this mortgage may decrease or increase from time to time, provided that the total unpaid balance so secured at any one time shall not exceed a principal amount greater than double the original principal amount of the loan plus interest thereon and plus any disbursements made for the payment of taxes, levies, or insurance on the property covered by the lien of this mortgage, together with interest on such disbursements.

25.     Communications: All communications required under this mortgage or the note shall be in writing and shall be sent by registered or certified mail, postage prepaid, addressed to the Mortgagor and the Mortgagee at the address set forth in the heading of this mortgage or in the note or to such other address as either party may designate from time to time by notice to the other in the manner set forth herein.

26.     Amendment: This mortgage cannot be changed or amended except by agreement in writing signed by the party against whom enforcement of the change is sought.

Initials 

27.    Construction:  Whenever used in this mortgage, unless the context clearly indicates a contrary intent:

(a)    The word "Mortgagor" shall mean the person who executes this mortgage and any subsequent owner of the mortgaged property and his/her/its respective heirs, executors, administrators, successors, and assigns;

(b)    The word "Mortgagee" shall mean the person specifically named herein as "Mortgagee," or any subsequent holder of this mortgage;

(c)    The word "person" shall mean individual, corporation, partnership, limited liability company, unincorporated association or other entity;

(d)    The use of any gender shall include all genders;

(e)    The singular number shall include the plural and the plural the singular, as the context may require;

(f)    If the Mortgagor is more than one person, all agreements, conditions, covenants, provisions, stipulations, warrants of attorney, authorizations, waivers, releases, options, undertakings, rights, and benefits made or given by Mortgagor shall be joint and several and shall bind and affect all persons who are defined as "Mortgagor" as fully as though all of them were specifically named herein wherever the word "Mortgagor" is used.

28.    Captions:    The captions preceding the text of the paragraphs or subparagraphs of this mortgage are inserted only for convenience of reference and shall not constitute a part of this mortgage, and they shall not in any way affect its meaning, construction, or effect.

29.    Protective Advances:  All advances, disbursements and expenditures made by Mortgagee before and during a foreclosure, and before and after judgment of foreclosure, and at any time prior to sale, and, where applicable, after sale, and during the pendency of any related proceedings, for the following purposes, in addition to those otherwise authorized by this mortgage or by the Illinois Mortgage Foreclosure Law (collectively "Protective Advances"), shall have the benefit of all applicable provisions of the Illinois Mortgage Foreclosure Law, including those provisions of the Illinois Mortgage Foreclosure Law hereinbelow referred to:

(a)    ˙ all advances by Mortgagee in accordance with the terms of this Mortgage to:  (i) preserve or maintain, repair, restore or rebuild the improvements upon the Mortgaged property; (ii) preserve the lien of this mortgage or the priority thereof; or (iii) enforce this mortgage, as referred to in Subsection (b)(5) of Section 5/15-1302 of the Illinois Mortgage Foreclosure Law;

Initials 

14 of 17

(b)     payments by Mortgagee of:  (i) when due, installments of principal, interest or other obligations in accordance with the terms of any prior lien or encumbrance; (ii) when due, installments of real estate taxes and assessments, general and special and all other taxes and assessments of any kind or nature whatsoever which are assessed or imposed upon the Mortgaged property or any part thereof; (iii) other obligations authorized by this mortgage; or (iv) with court approval, any other amounts in connection with other liens, encumbrances or interests reasonably necessary to preserve the status of the title, as referred to in Section 5/15-1505 of the Illinois Mortgage Foreclosure Law;

(c)     advances by Mortgagee in settlement or compromise of any claims asserted by claimants under senior mortgages or any other prior liens;

(d)     attorneys' fees and other costs incurred:  (i) in connection with the foreclosure of this mortgage as referred to in Sections 5/15-1504(d)(2) and 5/15-1510 of the Illinois Mortgage Foreclosure Law, (ii) in connection with any action, suit or proceeding brought by or against Mortgagee for the enforcement of this mortgage or arising from the interest of Mortgagee hereunder; or (iii) in the preparation for the commencement or defense of any such foreclosure or other action;

(e)     Mortgagee's fees and costs, including attorney's fees, arising between the entry of judgment of foreclosure and the confirmation hearing as referred to in Subsection (b)(1) of Section 5/15-1508 of the Illinois Mortgage Foreclosure Law;

(f)     advances of any amount required to make up a deficiency in deposits for installments of taxes and assessments and insurance premiums as may be authorized by this mortgage;

(g)     expenses deductible from proceeds of sale as referred to in Subsections (a) and (b) of Section 5/15-1512 of the Illinois Mortgage Foreclosure Law;

(h)     expenses incurred and expenditures made by Mortgagee for any one or more of the following:  (i) if the mortgaged property or any portion thereof constitutes one or more units under a condominium declaration, assessments imposed upon the unit owner thereof; (ii) if any interest in the mortgaged property is a leasehold estate under a lease or sublease, rentals or other payments required to be made by the lessee under the terms of the lease or sublease; (iii) premiums for casualty and liability insurance paid by Mortgagee whether or not Mortgagee or a receiver is in possession, if reasonably required, in reasonable amounts, and all renewals thereof, without regard to the limitation to maintaining of existing insurance in effect at the time any receiver or mortgagee takes possession of the mortgaged property imposed by Subsection (c)(1) of Section 5/15-1704 of the Illinois Mortgage Foreclosure Law; (iv) repair or restoration of damage or destruction in excess of available insurance proceeds or condemnation awards; (v) payments required or deemed by Mortgagee to be for the benefit of the mortgaged property or required to be made by the owner of the mortgaged property under any grant

Initials

15 of 17

or declaration of easement, easement agreement, agreement with any adjoining land owners or instruments creating covenants or restrictions for the benefit of or affecting the mortgaged property (vi) shared or common expense assessments payable to any association or corporation in which the owner of the mortgaged property is a member in any way affecting the mortgaged property; (vii) if the loan secured hereby is a construction loan, costs incurred by Mortgagee for demolition, preparation for and completion of construction, as may be authorized by the applicable commitment or loan agreement; (viii) pursuant to any lease or other agreement for occupancy of the mortgaged property; and (ix) if this mortgage is insured, payments of FHA or private mortgage insurance.

All Protective Advances shall be so much additional indebtedness secured by this mortgage, and shall become immediately due and payable without notice and with interest thereon from the date of the advance until paid at the rate of interest payable after default under the terms of the note.

This mortgage shall be a lien for all Protective Advances as to subsequent purchasers and judgment creditors from the time this mortgage is recorded pursuant to Subsection (b)(1) of Section 5/15-1302 of the Illinois Mortgage Foreclosure Law.

All Protective Advances shall, except to the extent, if any, that any of the same is clearly contrary to or inconsistent with the provisions of the Illinois Mortgage Foreclosure Law, apply to and be included in:

    (1)    the determination of the amount of indebtedness secured by this mortgage at any time;

    (2)    the indebtedness found due and owing to Mortgagee in the judgment of foreclosure and any subsequent supplemental judgments, orders, adjudications or findings by the court of any additional indebtedness becoming due after such entry of judgment, it being agreed that in any foreclosure judgment, the court may reserve jurisdiction for such purpose;

    (3)    if the right of redemption has not been waived by this mortgage, computation of amount required to redeem, pursuant to Subsections (d)(2) and (e) of Section 5/15-1603 of the Illinois Mortgage Foreclosure Law;

    (4)    the determination of amounts deductible from sale proceeds pursuant to Section 5/15-1512 of the Illinois Mortgage Foreclosure Law;

    (5)    the application of income in the hands of any receiver or mortgagee in possession; and

    (6)    the computation of any deficiency judgment pursuant to Subsections (b)(2) and (e) of Sections 5/15-1508 and Section 5/15-1511 of the Illinois Mortgage Foreclosure Law.

Initials 

16 of 17

30.   WAIVER OF TRIAL BY JURY:  MORTGAGOR AND MORTGAGEE EACH (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS MORTGAGE, THE NOTE, OR THE OTHER DOCUMENTS EVIDENCING AND/OR SECURING THE LOAN, OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

        IN WITNESS WHEREOF, the Mortgagor has caused this mortgage to be duly executed as of the day and year first above written.

                                                        MORTGAGOR:

                                                        Barry T. Haywood, Borrower

STATE OF ILLINOIS   )
                    ) SS
COUNTY OF COOK      )

I, the undersigned Notary Public in and for said County in said State, hereby certify that **Barry T. Haywood** whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said mortgage, he executed the same voluntarily on the date of the instrument.

        Given under my hand and official seal this January 18, 2007.

        NOTARY SEAL

                                        Notary Public

        OFFICIAL SEAL
        KIM CALACE
        NOTARY PUBLIC - STATE OF ILLINOIS
        MY COMMISSION EXPIRES:01/05/09

                    17 of 17                                    Initials

MORTGAGE AND SECURITY AGREEMENT
EXHIBIT A

LEGAL DESCRIPTION

LOT 10 IN BLOCK 2 OF BEACON HILLS, A SUBDIVISION OF PART OF
SECTIONS 19,20,29 AND 30, TOWNSHIP 35 NORTH, RANGE 14, EAST OF THE
THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

PIN # 32-30-108-010-0000

MORTGAGE AND SECURITY AGREEMENT
EXHIBIT B

APPLICABLE LIENS

(WRITE IN N/A IF NONE APPLY)

SIGN & INITIAL AT BOTTOM

Initials

## JUNIOR ENCUMBRANCE RIDER

This AGREEMENT made and entered into this January 18, 2007 by and between **Barry T. Haywood**, "Borrower" and **Omni National Bank**, "Lender".

## WITNESSETH:

WHEREAS, Borrower is indebted to Lender in the amount of **$69,000.00** as evidenced by a certain Commercial Promissory Note (the "Note") and a certain Mortgage and Security Agreement (the "Mortgage") dated January 18, 2007, and,

WHEREAS, as part of the inducement for Lender to make the loan to Borrower, Borrower has agreed that during the term of the Note and Mortgage, Borrower will not encumber any of the assets as are pledged pursuant to the Mortgage, of which this document is a part, until the Note is paid in full.

NOW, THEREFORE, in consideration of the mutual covenants and agreements as are contained herein and in the Note and Mortgage, the parties agree as follows:

1. Borrower will not encumber, pledge, assign, sell or in any way dispose of the security held by Lender as defined in the Mortgage without written consent of Lender. This Agreement shall serve as notice to all persons, firms, partnerships, associations and corporations that further loans against the collateral as defined in the Mortgage are strictly prohibited.

2. Borrower affirmatively covenants that he has the ability to pay the debt underlying the Note and Mortgage, but agrees that he cannot afford further indebtedness and therefore agrees to comply with the prohibition as contained herein.

IN WITNESS WHEREOF, the undersigned has executed this Junior Encumbrance Rider on this January 18, 2007.

_Barry T. Haywood, Borrower_

STATE OF ILLINOIS          )
COUNTY OF COOK             )

Subscribed and sworn to before me this January 18, 2007.

NOTARY PUBLIC

NOTARY SEAL

OFFICIAL SEAL
KIM CALACE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:01/05/09